UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GERSON IRVING FOX, | ) | CASE NO. CV 17-8302-R |
| | ) | |
| Appellant, | ) | ORDER DENYING APPEAL |
| | ) | |
| v. | ) | |
| | ) | |
| ELISSA MILLER, in her capacity as Chapter 7 trustee, | ) ) | Bankruptcy No. 2:15-bk-24399-BB<br>Adversary No. 2:16-ap-01235-BB |
| | ) | |
| Appellee. | ) | |

This matter comes before the Court on appeal from the United States Bankruptcy Court for the Central District of California. Appellant filed his opening brief on February 26, 2018. (Dkt. 11). This Court took the matter under submission on April 12, 2018.

On September 17, 2015, Appellant filed for chapter 7 bankruptcy. On April 10, 2017, Appellee filed the First Amended Complaint, which states two claims alleging that Appellant's discharge should be denied under 11 U.S.C. § 727(a)(3). Appellee moved for summary judgment on the second claim. On November 1, 2017, the bankruptcy court granted the motion and entered judgment in favor of Appellee. The bankruptcy court held that (1) there was no genuine dispute of material fact that Appellant failed to keep or preserve records from which the trustee could ascertain Appellant's financial condition, as required by § 727(a)(3), and (2) there was no genuine dispute of material fact that Appellant's failure to keep books and records was not justified.

Appellant appeals the bankruptcy court's November 1, 2017, Order granting summary judgment. This Court has jurisdiction over the appeal under 11 U.S.C. § 158. The issues on appeal are:

1. Do triable issues of material fact exist as to whether Appellant failed to keep or preserve books and records as required by 11 U.S.C. § 727(a)(3)?
2. Do triable issues of material fact exist as to whether Appellant's conduct was justified under the circumstances of the case?

"We review the bankruptcy court's grant of summary judgment de novo, and must view the evidence in the light most favorable to the non-moving party and determine whether there are any genuine issues of material fact and whether the bankruptcy court correctly applied the substantive law." *In re Caneva*, 550 F.3d 755, 760 (9th Cir. 2008). A material fact is one that, "under the governing substantive law…could affect the outcome of the case." *Id.* A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment must initially identify the evidence which it believes demonstrates that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *In re Caneva*, 550 F.3d at 761.

**Facts**

Appellant was a Certified Public Accountant for a few years in the 1950s. He also attended law school but did not graduate. Appellant was admitted to the California State Bar in 1958. In 1956, Appellant co-founded the business Barry's Jewelers. Appellant managed the business until 1989. He sold his interest in the business in or around 1995. After this, but before petitioning for bankruptcy, Appellant invested in over thirty-five real properties through numerous single purpose entities.

On September 17, 2015, Appellant filed a voluntary petition for chapter 7 bankruptcy. During the initial meeting of the creditors, Appellant acknowledged that he had not filed tax returns since 2012, stating "that just didn't seem to be a top priority." When asked where

Appellant keeps his legal papers he responded, "I don't." When asked who would have possession of legal documents, such as old tax returns, Appellant stated, "[d]uring all the litigation I gave whatever documents I had to the different attorneys." When asked about a $175,000 debt owed to Charlotte Burch-Leeds, he simply stated that "[s]he lent me some money to pay for some legal fees." When asked questions regarding the Bearbiz Irrevocable Trust ("Bearbiz"), he stated that he "thinks [Bearbiz] was some trust [he] used to own," but did not know what happened to the assets in Bearbiz. When asked "who would have the documents necessary to prepare 2013 and 2014 taxes for you?" Appellant stated, "I don't think anybody has." When asked what Appellant would have done with documents necessary to prepare 2013 and 2014 taxes, Appellant responded, "I have no idea."

At the end of the meeting, Appellee's counsel gave Appellant's counsel a list of document requests (the "341(a) Requests").[1] In response, Appellant produced a banker's box containing approximately 3,000 pages of documents (the "Produced Documents"). After reviewing the Produced Documents, Appellee concluded that Appellant did not respond to a number of document requests. At the second meeting of the creditors, Appellant's counsel acknowledged, "I get that you haven't received everything. He just doesn't have anything else to give."

The Produced Documents are all of the documents in Appellant's possession, custody, or control that are responsive to the 341(a) Requests. The Produced Documents did not include a single document related to Bearbiz, including documents related to any loans or investments by Bearbiz. The Produced Documents did not include an asset list for the Fox Family Trust for any year between 2012 and Petition Date. The Produced Documents did not contain a single K-1

---

[1] Appellee requested the following categories of documents: (1) January 2013 through current bank records for all accounts held by Defendant individually, jointly with his wife, and for all LLC/Inc.'s that Defendants holds/held interest in; (2) asset list for the Gerson and Gertrude Fox Family Trust (the "Fox Family Trust") for 2012-2015; (3) a copy of the Bearbiz Irrevocable Trust, as listed on Defendant's 2012 tax return; (4) a copy of all amendments to the Bearbiz Irrevocable Trust; (5) bank records for Bearbiz from 2012-2015; (6) documents indicating the settlors of Bearbiz, beneficiaries of Bearbiz, trustee(s) of Bearbiz, and all assets held by Bearbiz trust; (7) all of Defendant's K-1s from 2012 through 2015; (8) 2012-2015 statements of account, dividend history, and documents related to the sale, liquidation, holding, etc., from the following entities listed on Appellant's 2012 tax return: Legg Mason, RBC Dominion, Wells Fargo, Charles Schwab; (9) 2012-2015 K-1s, 2012-2015 tax returns, 2012-2013 bank records, asset list, formation documents, filings with secretary of state, documents related to the sale, liquidation, foreclosure, and/or assignment of Defendant's interest, and historical through current officer, director, and shareholder lists for the various "Fox Entities" listed on Appellant's 2012 tax return.

issued to Defendant in the year of 2013, 2014 or 2015. The Produced Documents did not include a single K-1 from Bearbiz for any tax year. The Produced Documents did not include a single document related to Appellant's Charles Schwab account. The Produced Documents included only one document related to Appellant's Legg Mason account, a 2012 1099-B. The Produced Documents included only one document related to Appellant's RBC Dominion account, a 2012 1099-DIV for RBC Wealth Management. The Produced Documents did not include any documents related to the investment interest expenses that Appellant claimed on his 2012 tax return. The Produced Documents did not include any documents related to Appellant's 2013, 2014, and/or 2015 tax returns. As for Appellant's debt to Burch-Leeds, the Produced Documents included only a copy of a promissory note between Appellant and Burch-Leeds.

Appellant's 2012 tax return disclosed passive income or loss from twenty-eight different entities, including $181,656.00 of income from Bearbiz, ordinary dividends from Charles Schwab, Legg Mason, RBC Dominion, and Wells Fargo, and income or loss from three rental properties. It disclosed $267,322.00 in net investment income and an $184,791.00 investment interest expense deduction. The tax return also claimed an investment interest expense of approximately $7,000.00 associated with Burch-Leeds.

**Disputed Facts**

Appellant is the settlor of Bearbiz and he transferred assets to Bearbiz in April 2011. Because Bearbiz is an intentionally deficient grantor trust, Appellant is liable for any taxable event associated with Bearbiz. In 2011, Bearbiz obtained a loan "for investment purposes" and claimed approximately $63,000.00 in investment interest expenses, $59,000.00 of which carried over to Appellant's 2012 tax return. According to Appellant's 2011 and 2012 tax returns, Bearbiz made nearly $1,000,000.00 in profit in less than two years.

Appellant disputes Uncontroverted Fact ("UF") 6, "[Appellant] is a CPA/accountant." However, Appellant's Opening Brief states that he "became a Certified Public Account in California in the 1950s…[and he] practice[d] accountancy on a limited basis for a few years." Br. at 10. There is no genuine dispute that appellant is an accountant.

Appellant disputes UF 9, "[Appellant] is a sophisticated and educated business person."

1 First, it is undisputed that Appellant is educated. Not only was he an accountant, he attended law
2 school and was admitted to the California State Bar in 1958. "Instead of pursuing a career in
3 accounting or law, [Appellant]…co-founded a jewelry company called Barry's Jewelers" in 1956.
4 Br. at 11. "The business was very successful, [Appellant] relinquished management responsibility
5 in 1989, and in or around 1995 [Appellant] sold his interest in Barry's Jewelers." *Id.* Appellant
6 also states that he was an "eminently successful businessman." Excerpts of Record ("ER") at 246.
7 After selling his interest in Barry's Jewelers, Appellant invested in multiple properties. There is
8 no genuine dispute that Appellant is a sophisticated and educated business person.

Appellant disputes UF 29, "The Trustee and her counsel reviewed the Produced Documents and determined that a substantial number of 341(a) Requests were not responded to," on the basis that this is not an asserted fact but a legal conclusion. This is a properly asserted fact, and there is no genuine dispute here—Appellant did not dispute any of the facts regarding the documents that he turned over. At the second meeting of the creditors, his counsel acknowledged that the production was missing various categories of documents. Moreover, Appellant concedes that he has not responded to a substantial number of 341(a) Requests. Appellant states, "I acknowledge that I have been unable to provide the Trustee with many of the documents she requests, but I did provide what I had…. I am certain that I have lost track and recollection of many documents I once had." ER 260-261. There is no genuine dispute that the Produced Documents did not respond to a substantial number of 341(a) Requests.

Appellant disputes UF 75, "Based upon [Appellant's] failure to keep, maintain, and/or preserve adequate books and records, it is impossible for [Appellee] to accurately ascertain [Appellant's] financial condition or business transactions based upon the documents he kept, preserved and produced to [Appellee]." Appellant also disputes UF 76, "Due to [Appellant] being a sophisticated businessman, lawyer, and accountant, Defendant's failure to keep, maintain and/or preserve adequate books and records is not justified under all of the circumstances of this case." These are precisely the issues on appeal and will be addressed in the discussion.

27 \\\
28 \\\

**Discussion**

Title 11 of the United States Code, § 727(a)(3), provides that "[t]he Court shall grant the debtor a discharge, unless – the debtor has…failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3).

To state a prima facie case under § 727(a)(3), a plaintiff must show "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *In re Cox*, 41 F.3d 1294, 1296 (9th Cir. 1994). "[A] Court does not examine intent in determining whether a debtor has preserved adequate books and records of his financial affairs. Rather, the Court must determine whether creditors could ascertain the debtor's financial condition and material business transactions from the record the [debtor] presents. *In re Schreiter*, 2007 WL 1772176, at *3 (D. Ariz. June 19, 2007).

In this case, it is undisputed that Appellant failed to keep and maintain records of his financial affairs. Appellant devotes significant space in his brief discussing the documents that he did turn over—some 3,000 pages responsive to the 341(a) Requests. However, the issue in this case has nothing to do with the *volume* of documents that Appellant kept, preserved, and produced. The issue here is about the *substance* of the Produced Documents and whether Appellee could ascertain Appellant's financial condition based on those documents. *See In re Caneva*, 550 F.3d at 761. There is no genuine dispute of fact that Appellee could not.

First, Appellant failed to file tax returns in 2013 and 2014, and he also failed to maintain the documents necessary for filing a tax return in 2013, 2014, and 2015. "Tax returns are quintessential items in a personal bankruptcy. It is not difficult to discern how a tax return would provide a creditor or a trustee with important financial information about a debtor: it provides substantial personal financial information such as income, expenses, and stock transactions…it is immaterial whether [Appellant] failed to file these returns intentionally. [Appellant's] failure to file tax returns provides another basis for denying [Appellant's] discharge under section 727(a)(3)

because it prevents creditors and trustees from obtaining important financial information." *In re Gartner*, 326 B.R. 357, 377 (Bankr. S.D. Tex. 2005).

In this case, Appellant has not filed a tax return since 2012. This 2012 tax return disclosed substantial information about Appellant's finances—it showed passive income or loss from twenty-eight different entities, income from Bearbiz, income or loss from rental properties, and dividends from Charles Schwab, Legg Mason, RBC Dominion, and Wells Fargo. Without tax returns from 2013 or 2014, Appellant cannot provide Appellee with important information necessary to determine his financial status. Courts have denied a discharge under § 727(a)(3) based solely on a debtor's failure to file tax returns or keep the documents that would allow the trustee to reconstruct his financial status. *See In re Weisenfeld*, 2011 Bankr. LEXIS 1021, at *13 (Bankr. S.D. Fla. Mar. 18, 2011).

Appellant also failed to keep or preserve documents related to Bearbiz, the Fox Entities, his Charles Schwab, RBC Dominion, and Legg Mason accounts, and his debt to Burch-Leeds. "[W]hen a debtor owns and controls numerous business entities and engages in substantial financial transactions, the complete absence of recorded information related to those entities and transaction establishes a prima facie violation of 11 U.S.C. § 727(a)(3)." *In re Caneva*, 550 F.3d at 762.

Here, it is undisputed that Appellant is the settlor of Bearbiz and transferred assets to Bearbiz. It is also undisputed that Appellant failed to keep, maintain, or produce a single document related to Bearbiz. With regard to the Fox Entities, it is undisputed that Appellant failed to preserve bank records, asset lists, or tax returns for the Fox Entities, as well as documents related to the sale, liquidation, foreclosure, and assignment of Appellant's interest in any of the Fox Entities. It is undisputed that the only documents Appellant kept related to his RBC Dominion and Legg Mason accounts were a 2012 1099-B for each account, and he did not keep any documents related to the Charles Schwab account. Last, it is undisputed that Appellant owes a debt to Charlotte Burch-Leeds arising from a loan she gave him for "legal fees." It is undisputed that the only document Appellant kept in relation to this debt was a two-page promissory note. It is also undisputed that Defendant's 2012 tax return claims an investment interest expense of

7

approximately $7,000 associated with Burch-Leeds, which implies that Appellant held some property for investment in connection with this debt. *See* 26 U.S.C. § 163(d)(3)(A) ("The term 'investment interest' means any interest allowable as a deduction under this chapter…which is paid or accrued on indebtedness properly allocable to property held for investment."). Appellant's undisputed failure to keep or preserve documents related to these entities and transactions is sufficient to establish a prima facie violation of § 727(a)(3). *In re Caneva*, 550 F.3d at 762; *see also In re Cox*, 904 F.2d 1399, 1401 (9th Cir. 1990) ("Creditors are not required to risk the withholding or concealment of assets by the bankrupt under cover of a chaotic or incomplete set of books or records."); *In re Brandenfels*, 2015 Bankr. LEXIS 3410, at *17 (B.A.P. 9th Cir. Oct. 7, 2015) ("It is not enough for [a debtor] to provide records about her overall financial situation; she must also provide records adequate to allow creditors to trace all of her transactions.").

The mere fact that Appellant produced a substantial quantity of documents does not automatically generate a genuine dispute of material fact as to whether the documents are adequate to determine his financial condition notwithstanding his admission that he has no business records for numerous entities and transactions. *In re Caneva*, 550 F.3d at 761. As stated in *Caneva*, a debtor has an "affirmative duty" to "keep and preserve business records that will enable his creditors to accurately ascertain his financial condition and business transactions." *Id.* at 762. In this case, Appellant does not dispute Appellee's statements that he failed to keep and preserve various business records that were necessary to determine his financial condition and business transactions. Appellant also does not present evidence demonstrating a triable issue of material fact as to whether Appellee could ascertain his financial condition based on the Produced Documents. Therefore, there is no genuine dispute of material fact that Appellant failed to maintain and preserve adequate books and records as required by § 727(a)(3).

"If a creditor establishes a prima facie violation of § 727(a)(3), a debtor may show that he is nonetheless entitled to discharge by establishing that his failure to keep or preserve records was justified under the circumstances of his case." *In re Caneva*, 550 F.3d at 763. To determine whether a debtor's failure to keep books and records was justified, "the Court must determine whether a reasonable person would have acted similarly, taking into consideration education,

experience, and sophistication; the volume or complexity of the debtor's business; the amount of credit extended to the debtor or his business; and any other circumstances that should be fairly considered. A sophisticated business person is generally held to a high standard in record keeping." *In re Schreiter*, 2007 WL 1772176, at *3.

In this case, there is no genuine dispute that Appellant has worn many professional hats—he has been a lawyer, an accountant, and a sophisticated businessman. It is undisputed that he was a Certified Public Accountant and admitted to the California State Bar. It is undisputed that he co-founded and operated a business, Barry's Jewelers, for almost forty years. It is also undisputed that Appellant has invested in several real properties through numerous single purpose entities. These facts, taken together, show that Appellant is indisputably a sophisticated business person and subject to a higher standard of record keeping. *Id*. A professional such as Appellant could reasonably be expected to keep books and records of his financial transactions. *See Meridian Bank v. Alten*, 958 F.2d 1226, 1231-32 (3d Cir. 1992) ("As an experienced attorney, [the debtor] is not an unsophisticated wage earner. He is a knowledgeable and professional person who knew the value of maintaining adequate records."). The fact that he no longer practices law or accountancy, sold his interest in his business, and was defrauded in the past does not suddenly render him unsophisticated. The question here is whether a *reasonable* person with Appellant's education, experience, and sophistication would have kept adequate books and records. Based on the record, there is no genuine dispute of material fact that a reasonable person with Appellant's education, experience, and sophistication would have kept adequate books and records.

Appellant offers no genuine justification for his failure to maintain adequate books and records. On summary judgment, Appellant stated that he "provided [Appellee] with what he had, and it has not resulted in any real prejudice to [Appellee]." ER 247. Whether or not Appellant's failure resulted in any "real prejudice" to Appellee (which the Court will probably never know, since Appellant's records do not paint a complete picture of his financial condition), he must still *justify the failure* in order to obtain a discharge under § 727(a)(3). *In re Caneva*, 550 F.3d at 763. In this case, Appellant suggests that his failure to maintain adequate records was related to his age and failing health, however he cannot exempt himself from this duty by blandly asserting the

9

status of an elderly person in poor health.  *See In re Losinski*, 80 b.R. 464, 474 (Bankr. D. Minn. 1987); *see also FTC v. Publ'g Clearing House*, 150 F.3d 1168, 1172 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.  The same can be said regarding conclusory, self-serving statements in appellate briefs.").  Appellant must present evidence demonstrating that there is a triable issue of material fact as to whether his failure to maintain adequate records was justified under the circumstances.  Appellant presents no such evidence, and as such, no triable issue of material fact exists.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 377 (9th Cir. 2010) ("Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.").

Based on the evidence in the record, there is no genuine issue of material fact that Appellant failed to maintain adequate books and records as required by § 727(a)(3).  There is also no genuine dispute of material fact that Appellant's failure to maintain adequate books and records was not justified.  Accordingly, Appellee is entitled to judgment as a matter of law.  The bankruptcy court's judgment is affirmed.

**IT IS HEREBY ORDERED** that Appellant's appeal is DENIED.  (Dkt. 11).

Dated: August 1, 2018.

_____

MANUEL L. REAL
UNITED STATES DISTRICT JUDGE